IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 5:12-CV-386 (MTT) |
| | ) |
| GEORGIA DEPARTMENT OF CORRECTIONS, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is the Defendants'[1] Motion to Dismiss (Doc. 14) the Plaintiff's Amended Complaint (Doc. 13). The Plaintiff has not responded to the Motion. For the reasons discussed below, the Motion is **GRANTED**.[2] Also pending before the Court is the Defendants' Motion to Stay Discovery (Doc. 7). That motion is **DENIED as moot**.

### I.   Background

The Plaintiff alleges that, while incarcerated at Arrendale State Prison in October 2010, she was sexually assaulted by Defendant Frederick Mitchell, who at the time was a correctional officer there. (Doc. 1, ¶¶ 11-12). She accuses Mitchell of forcing her to

---

[1] This does not include Defendant Frederick Mitchell in his individual capacity, who is represented by separate counsel and has already filed an Answer (Doc. 5) to the Plaintiff's original Complaint.

[2] In a prior Order (Doc. 12), the Court partially granted the Defendants' first Motion to Dismiss (Doc. 6). In that Order the Court dismissed the federal official capacity claims against each Defendant and the federal claims against the Georgia DOC, pursuant to Fed. R. Civ. P. 12(b)(1), as barred by Eleventh Amendment immunity. Also in that Order, the Court dismissed state constitutional claims against each Defendant in their official and individual capacities, pursuant to Fed. R. Civ. P. 12(b)(1).

have unprotected vaginal intercourse on October 10, 2010. (Doc. 1, ¶ 12). Mitchell resigned his position in lieu of termination November 2, 2010. (Doc. 1, ¶ 13). Two days after Mitchell resigned, the Plaintiff reported the assault to Defendant Kathleen Kennedy.[3] (Doc. 1, ¶ 14). The Plaintiff was taken to prison medical facilities and provided medical and mental health evaluations, as well as pregnancy and STD tests. (Doc. 1, ¶ 14). The Plaintiff was later called back to the medical facilities to receive her test results. She was prescribed an antibiotic and told all was well. (Doc. 1, ¶ 15). The Plaintiff subsequently filed a grievance about the incident and asked for mental health assistance and to meet with internal affairs. (Doc. 1, ¶ 16). Thereafter, the state transferred her to Pulaski State Prison where, upon reviewing her medical records, she discovered the medical tests had actually revealed the presence of streptococcus, group B. (Doc. 1, ¶ 17). The Plaintiff then tried to kill herself by ingesting a number of pills. She alleges this suicide attempt directly resulted from the rape and subsequent harassment. (Doc. 1, ¶ 18).

      The Plaintiff filed this lawsuit in September 2012. She named as Defendants the Georgia Department of Corrections (DOC); DOC Commissioner Owens, in his official capacity; Assistant DOC Commissioner Ward, in his official and individual capacities; DOC Facilities Director Tillman, in his official and individual capacities; Arrendale State Prison Warden Seabolt, in her official and individual capacities; Arrendale State Prison Warden of Security Kennedy, in her official and individual capacities; and former Corrections Officer Mitchell, in his official and individual capacities. The Plaintiff sued pursuant to 42 U.S.C. § 1983, arguing the Defendants violated her Eighth and

---

[3] It remains unclear whether Mitchell's resignation was in any way related to the alleged assault.

Fourteenth Amendment rights under the United States Constitution through a custom and practice of deliberately failing to secure and protect her personal safety. She additionally asserts against all Defendants, but Mitchell, § 1983 claims alleging that her rights were violated by the Defendants' failure to provide adequate and appropriate staffing, training, and education for correctional officers.

The Defendants moved to dismiss the Plaintiff's claims in November 2012. (Doc. 6). The Court granted the motion in part, dismissing the federal official capacity claims, the federal claims against the Georgia DOC, and any state constitutional claims. (Doc. 12). However, the Court postponed ruling on the Plaintiff's § 1983 claims asserted against Defendants Ward, Tillman, Seabolt, and Kennedy in their individual capacities, allowing the Plaintiff to amend her Complaint to further substantiate those allegations. The Plaintiff filed an amended Complaint in January 2013. The only material change she made was the addition of the following paragraph:

> In 2010, an Arrendale State Prison correctional officer had nonconsensual sexual intercourse with two different female prisoners. As a result, one prisoner contracted a sexually transmitted disease, leading to substantial physical and mental health concerns. The second prisoner suffered a miscarriage as a result of the rape and due to medical complications, can no longer bear children. These incidents were reported to Defendants. Defendants had the authority and means to provide for training following these abuses. Although Defendant Kennedy educated the female prisoners on reporting procedures for sexual assault, no similar training or instruction was given to Arrendale State Prison's male correctional officers. Despite these 2010 violations, male correctional officers continued to exclusively guard the female dorms. Additional training or a change in procedure would have protected Plaintiff from the sexual abuse she endured.

(Doc. 13, ¶ 22).

After the Plaintiff filed her amended Complaint, the Defendants again moved to dismiss the individual capacity § 1983 claims against Defendants Ward, Tillman, Seabolt, and Kennedy. (Doc. 14).

## II.   Discussion

### A. Motion to Dismiss Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain specific factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006). However, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B. Individual § 1983 Claims

In Count One, the Plaintiff claims Defendants Ward, Tillman, Seabolt, and Kennedy followed a custom and practice of deliberately failing to keep her safe while

she was in their custody.  In Count Two, the Plaintiff contends these Defendants did not adequately staff, train, and educate Arrendale State Prison personnel.

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Accordingly, the standard for holding liable a supervisor in his individual capacity for a subordinate's actions is "extremely rigorous."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  The supervisor must have personally participated in the alleged constitutional violation or there must be a causal connection between his actions and the alleged violation.  *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).  To establish causation, a plaintiff must present (1) evidence sufficient to support an inference that the supervisor directed the subordinate to act unlawfully or that he knew the subordinate would act unlawfully and then failed to stop him from doing so; (2) evidence of a custom or policy that results in a deliberate indifference to the plaintiff's constitutional rights; or (3) evidence of a history of widespread abuse that put the supervisor on notice to correct the alleged deprivation, and he failed to do so.  *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007).  Notice is insufficient unless the deprivations are "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  *Id.* at 1329.

In this case, the Plaintiff has not suggested Ward, Tillman, Seabolt, or Kennedy participated in her alleged rape, directed Mitchell to rape her, or knew Mitchell would rape her and failed to stop him from doing.  Thus, the Plaintiff must allege a causal connection between their actions and her harm by showing the Defendants (1) engaged in some custom or policy that resulted in their deliberate indifference to the Plaintiff's

right to not be raped, or (2) were put on notice by a history of widespread sexual assaults such that they should have acted to stop the Plaintiff's assault.  Yet even after amending her Complaint, the Plaintiff has still not sufficiently alleged these things occurred.

The Complaint is devoid of any facts suggesting the existence of a custom or policy that would reveal the Defendants' deliberate indifference to the Plaintiff's constitutional rights.

> [A] policy is a decision that is … created by an official of such rank that he or she could be said to be acting on behalf of the municipality.  A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law.  Demonstrating a policy or custom requires show[ing] a persistent and wide-spread practice.

*Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) (internal citations and quotation marks removed).  The failure to train may also serve as an actionable policy or custom against a supervisory official, but "'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [subordinate employees] come into contact.'"  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  In such cases, deliberate indifference arises when the need for more or different training is obvious – such as when there has been a history of abuse by subordinates or when the failure to train is likely to result in a constitutional violation. *Williams v. Limestone Cnty., Ala.*, 198 Fed. Appx. 893, 896 (11th Cir. 2006); *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1398 (11th Cir. 1994).

Here, the Plaintiff makes only the base accusation that the Defendants followed some custom or practice that amounted to deliberate indifference to her safety.  Initially,

the Plaintiff provided no facts to support this allegation.  When she amended her Complaint, she sought to bolster her claim by adding facts regarding sexual assaults that occurred at the prison the same year the Plaintiff was raped.  According to the Plaintiff, a correctional officer she does not identify had nonconsensual sex with two different female prisoners sometime in 2010,[4] transmitting a STD to one and causing the other to suffer a miscarriage.  These incidents were allegedly reported to the Defendants.  The Plaintiff alleges the Defendants could have provided training to the male correctional officers who continued to guard the female dorms.  (Doc. 13, ¶ 22).

But this new allegation still does not allege facts that support a failure to train claim.  Even if the Court assumes these events occurred as alleged, they do not provide a basis for inferring the Defendants were *deliberately indifferent* to the Plaintiff's right to not be sexually assaulted.  As to whether the prior assaults should have put the Defendants on notice to take action to prevent Mitchell from assaulting the Plaintiff, the allegations are equally thin.  That another correctional officer sexually assaulted two inmates the same year the Plaintiff was assaulted does not constitute evidence of a persistent and widespread practice.  As alleged, the other two assaults were isolated occurrences.  This was not conduct that was flagrant, rampant, or of continued duration, and the Plaintiff does not allege it extended to any other prison staff.  Accordingly, the actions of this lone, unidentified correctional officer, who has no apparent connection to Mitchell other than their shared place of employment, and who has no apparent connection to the Plaintiff, cannot have put the Defendants on notice that they needed to do something to prevent Mitchell from assaulting the Plaintiff.

---

[4] Presumably this occurred prior to the Plaintiff's rape, but the Plaintiff does not explicitly allege this to be the case.

Therefore, there is no indication of a causal connection between the Defendants and the Plaintiff's rape, and the Plaintiff has not shown she has plausible § 1983 claims against the Defendants for failing to secure her personal safety or for failing to train prison correctional officers. Accordingly, her claims must be **dismissed**.

### III.   Conclusion

The remainder of the Defendants' Motion to Dismiss (Doc. 14) is **GRANTED**. The § 1983 claims against Defendants Ward, Tillman, Seabolt, and Kennedy in their individual capacities are **dismissed without prejudice** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[5] The Defendants' Motion to Stay Discovery (Doc. 7) is **DENIED as moot**. The only remaining claims in this case are those asserted against Frederick Mitchell.

**SO ORDERED**, this 5th day of March, 2013.

> S/ Marc T. Treadwell
> MARC T. TREADWELL, JUDGE
> UNITED STATES DISTRICT COURT

---

[5] Because the Court dismisses the Plaintiff's claims for failure to state a claim, it does not reach the Defendants' qualified immunity argument.